IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 4:08CR3018 |
| | ) | |
| Plaintiff, | ) | MEMORANDUM AND ORDER ON |
| | ) | DEFENDANT'S MOTION FOR |
| v. | ) | SENTENCE REDUCTION PURSUANT TO |
| | ) | 18 U.S.C. § 3582(c)(2) |
| LAWRENCE WESLEY JENKINS SR., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

On January 17, 2012, the defendant, Lawrence Wesley Jenkins, Sr., moved for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). (See ECF No. 106.) For the following reasons, his motion will be denied.

## I.   BACKGROUND

An indictment filed on February 21, 2008, charged Jenkins[1] and Doris Jean Williams with possessing with intent to distribute 50 grams or more of cocaine base ("crack cocaine") in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1). (ECF No. 1.) On April 28, 2008, Jenkins pleaded guilty to the charge. (See ECF Nos. 23-27.)

The United States Probation Office prepared a Presentence Investigation Report (PSR) using the 2007 edition of the United States Sentencing Guidelines Manual. (See generally PSR, ECF No. 89.) The PSR states that Jenkins was responsible for 80 grams of crack cocaine, and therefore his base offense level was 30. (Id. ¶ 22.) It also states, however, that Jenkins was a "career offender," which had the effect of making his offense level 37 and his criminal history category VI. (PSR ¶¶ 28-29, 45.) See also U.S.S.G. § 4B1.1(b) ("[I]f the offense level for a career offender from the table

---

[1] The name "Melvin Lee Bourne" appears on the indictment. On April 28, 2008, United States Magistrate Judge David L. Piester noted that the defendant's correct name is Lawrence Wesley Jenkins, Sr., and that his alias is Melvin Lee Bourne. (See ECF No. 23; see also, e.g., ECF Nos. 25, 26.)

in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. A career offender's criminal history category in every case under this subsection shall be Category VI."); id. (indicating that when the "Offense Statutory Maximum" is "Life," the "Offense Level" is 37); 21 U.S.C. § 841(a), (b)(1)(A)(iii) (2008) (stating that possessing with intent to distribute 50 grams or more of cocaine base is subject to a maximum term of life imprisonment). Because Jenkins "demonstrated acceptance of responsibility," his offense level was reduced by 3, yielding a total offense level of 34. (PSR ¶¶ 29-30.) Based on a total offense level of 34 and a criminal history category of VI, Jenkins' guideline imprisonment range was determined to be 262-327 months. (Id. ¶ 110.)

Jenkins, through counsel, moved for a downward departure or variance, (see ECF Nos. 51-52), and the government moved for a Rule 35(b) sentence reduction, (see ECF No. 75). After considering these motions, I reduced Jenkins' offense level by three (i.e., from 34 to 31), and on November 6, 2008, I sentenced him to a term of 188 months. (See Judgment, ECF No. 87; Statement of Reasons at 3, ECF No. 88; see also ECF No. 84.)

## II.   ANALYSIS

Jenkins has moved for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 750 to the Sentencing Guidelines, which reduced the offence levels listed in U.S.S.G. § 2D1.1(c) for certain crack cocaine offenses. (See Def.'s Br. at 2, ECF No. 119.)[2] Section 3582(c)(2) allows a court to reduce a defendant's term of imprisonment if it was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission" and if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." See also Freeman v. United States, 131 S. Ct. 2685, 2690 (2011) ("When a retroactive Guideline amendment is adopted, § 3582(c)(2) permits defendants sentenced based on a sentencing range that has been modified to move for a reduced sentence."). The "applicable policy statement" specifically authorizes a sentence reduction based on Amendment 750 unless the amendment is not "applicable

---

[2] Amendment 750 became effective on November 1, 2011, and may be applied retroactively. See U.S. Sentencing Guidelines Manual app. C (Vol. III), Amendments 750, 759, pp. 391-98, 416-421 (2011).

to the defendant" or "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2), (c).

Courts must engage in a two-step process to determine whether, and to what extent, a sentence reduction is warranted under § 3582(c)(2). See Dillon v. United States, 130 S. Ct. 2683, 2691-92 (2010); United States v. Winston, 611 F.3d 919, 922 (8th Cir. 2010). First, the court must determine the guideline range that would have been applicable if the relevant amendment had been in effect at the time of the sentencing. Dillon, 130 S. Ct. at 2691. "In making such determination, the court shall substitute only the amendments listed in subsection (c) [of U.S.S.G. § 1B1.10] for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." Id. (quoting U.S.S.G. § 1B1.10(b)(1)) "Second, the court must 'decide whether to give the defendant the benefit of that particular reduced sentence,' considering 'the facts before it at the time of the resentencing, in light of the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable.'" United States v. Starks, 551 F.3d 839, 841 (8th Cir. 2009) (quoting United States v. Hasan, 245 F.3d 682, 685 (8th Cir. 2001)). See also Dillon, 130 S. Ct. at 2692.

If Amendment 750 had been in effect at the time of Jenkins' sentencing, his base offense level for 80 grams of crack cocaine would have been 26 rather than 30. (See Retroactive Sentencing Worksheet at 1, ECF No. 108); compare U.S.S.G. § 2D1.1(c)(7) (2011) with U.S.S.G. § 2D1.1(c)(5) (2007). As noted above, however, Jenkins is a "career offender," and therefore his guideline range was not based on section 2D1.1, but rather section 4B1.1. (See PSR ¶¶ 28-29); U.S.S.G. § 4B1.1(a)-(b). Because Amendment 750 did not alter section 4B1.1, Jenkins' offense level would have remained 37, and his criminal history category would have remained VI. (See Retroactive Sentencing Worksheet at 1.) With the three-level reduction for acceptance of responsibility, Jenkins' total offense level would have remained 34, and his guideline range would have remained 262-327 months (before the additional 3-level reduction I made during the sentencing hearing).[3] In short,

---

[3] The "applicable guideline range" for the purposes of U.S.S.G. § 1B1.10(a)(2)(B) is established before departures or variances are taken into account. See United States v. Tolliver, 570 F.3d 1062, 1066 (8th Cir. 2009). See also U.S.S.G. § 1B1.1; U.S.S.G. § 1B1.10, cmt. n.1(A).

when I substitute only Amendment 750 for the guideline provisions that were used when Jenkins was sentenced while leaving all other guideline application decisions unchanged, Jenkins' offense level and guideline range remain the same.  Because the amendment "does not have the effect of lowering the defendant's applicable guideline range," no sentence reduction is authorized under 18 U.S.C. § 3582(c)(2).  See U.S.S.G. § 1B1.10(a)(2)(B).  See also United States v. Colbert, No. 04-366(1), 2012 WL 694473, at *2 (D. Minn. March 1, 2012) (holding that Amendments 750 and 759 "do not apply to or otherwise benefit career offenders because those guideline ranges for career offenders have not been reduced by operation of the amendments"); United States v. Wiggins, No. CR09-06-LRR, 2011 WL 6292195, at *2 (N.D. Iowa Dec. 14, 2011) ("Because the court sentenced the defendant as a career offender, see USSG § 4B1.1, Amendment 750 (Parts A and C only) does not affect the defendant's guideline range."); cf. United States v. Collier, 581 F.3d 755, 758-59 (8th Cir. 2009) (holding that because the defendant was sentenced as a career offender under section 4B1.1, his sentence was not affected by Amendment 706, which altered section 2D1.1 of the Sentencing Guidelines); United States v. Thomas, 524 F.3d 889, 890 (8th Cir. 2008) (same).

Jenkins concedes that "[d]uring the last round of crack cocaine reductions, the Eighth Circuit would have agreed" that Jenkins' status as a career offender "precludes relief under § 3582." (Def.'s Br. at 2, ECF No. 119 (citing United States v. Tolliver, 570 F.3d 1062, 1066 (8th Cir. 2009); United States v. Thomas, 524 F.3d 889 (8th Cir. 2008)).)  He argues, however, that the Eighth Circuit's "narrow interpretation of § 3582" was recently rejected by the Supreme Court in Freeman v. United States, 131 S. Ct. 2685 (2011), and Freeman "makes Jenkins eligible for a reduction under Amendment 750." (Def.'s Br. at 2.)  More specifically, Jenkins submits that although the Eighth Circuit has held that "a sentence is 'based on' whatever guideline sets the offender's sentencing range," Freeman "provides a different definition for the words 'based on'" that conflicts with the Eighth Circuit's prior cases.  (Def.'s Br. at 3 (emphasis omitted).)  A detailed review of Freeman is in order.

In Freeman, the Court considered whether "defendants who entered into plea agreements that recommend a particular sentence as a condition of the guilty plea may be eligible for relief under § 3582(c)(2)."  131 S. Ct. at 2690 (citing Fed. R. Crim. P. 11(c)(1)(C)).  The Sixth Circuit had answered this question in the negative, holding that in the absence of a miscarriage of justice or

4

mutual mistake, defendants who enter into Rule 11(c)(1)(C) agreements cannot benefit from retroactive amendments to the Sentencing Guidelines. A divided Supreme Court reversed this holding, however. First, a four-Justice plurality concluded that because a district court cannot accept a Rule 11(c)(1)(C) agreement "without first evaluating the recommended sentence in light of the defendant's applicable sentencing range," and because U.S.S.G. § 1B1.10 "permit[s] the district court to revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence or approve the agreement," the district court "has authority to entertain § 3582(c)(2) motions when sentences are imposed in light of the Guidelines, even if the defendant enters into an 11(c)(1)(C) agreement." 131 S. Ct. at 2692-93. It further concluded that because the district court "expressed its independent judgment that [Freeman's] sentence was appropriate in light of the applicable Guidelines range, . . . its decision was . . . 'based on' that range," and § 3582(c)(2) relief was available to Freeman. 131 S. Ct. at 2693. In short, the plurality held that "[e]ven when a defendant enters into an 11(c)(1)(C) agreement, the judge's decision to accept the plea and impose the recommended sentence is likely to be based on the Guidelines; and when it is, the defendant should be eligible to seek § 3582(c)(2) relief." 131 S. Ct. at 2695.

Justice Sotomayor provided the fifth vote in favor of reversing the Sixth Circuit, but her reasoning differed significantly from that of the plurality. She found that "the term of imprisonment imposed by a district court pursuant to an agreement authorized by [Rule 11(c)(1)(C)] is 'based on' the agreement itself, not on the judge's calculation of the Sentencing Guidelines." 131 S. Ct. at 2695. She also rejected the plurality's view that "§ 3582(c)(2) should be understood 'to permit the district court to revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement.'" Id. at 2696-97. She concluded, however, that "if [the Rule 11(c)(1)(C)] agreement expressly uses a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment, and that range is subsequently lowered by the United States Sentencing Commission, the term of imprisonment is 'based on' the range employed and the defendant is eligible for sentence reduction under § 3582(c)(2)." Id. at 2695. See also id. at 2698 ("Because the very purpose of a (C) agreement is to allow the parties to determine the defendant's sentence, when

the agreement itself employs the particular Guidelines sentencing range applicable to the charged offenses in establishing the term of imprisonment, the defendant is eligible to have his sentence reduced under § 3582(c)(2).  In such cases, the district court's reduction of the sentence does not rewrite the plea agreement; instead, it enforces the agreement's terms." (footnote omitted)).  Because Freeman's Rule 11(c)(1)(C) agreement stated specifically that his term of imprisonment was based on a guideline sentencing range that had been lowered by the Sentencing Commission, she found that Freeman was eligible for a § 3582(c)(2) reduction.  131 S. Ct. at 2699-2700.

The four dissenting Justices agreed with Justice Sotomayor "that the sentence imposed under a Rule 11(c)(1)(C) plea agreement is based on the agreement, not on the Sentencing Guidelines," but rejected her view that a § 3582(c)(2) reduction is available whenever "the agreement could be said to 'use' or 'employ' a Guidelines range in arriving at the particular sentence specified in the agreement."  131 S. Ct. at 2700.  Thus, in their view § 3582(c)(2) is not available whenever sentences flow from Rule 11(c)(1)(C) plea agreements.

Jenkins' argument that Freeman expands the definition of the term "based on," see 18 U.S.C. § 3582(c)(2), begins with the premise that five Justices–the plurality and Justice Sotomayor–adopted the same "common-sense definition" of the term.  (Def.'s Br. at 4, ECF No. 119.)  This is a shaky premise given the fact that Justice Sotomayor flatly rejected the plurality's view that Freeman's sentence was "based on" the district judge's Guidelines calculation, along with its conclusion that § 3582(c)(2) allows a district court to "revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence or approve the agreement."  131 S. Ct. at 2692-93, 2696-97.  Nevertheless, it is fair to say that five Justices agree that a sentence may be "based on" the Guidelines even when a Rule 11(c)(1)(C) agreement governs the sentence, either because the judge must calculate the applicable Guidelines range before approving the agreement (as the plurality explains) or because the agreement itself expressly uses the Guidelines range to establish the term of imprisonment (as Justice Sotomayor explains).

For present purposes, I must determine whether the five Justices' views about the term "based on" can be reconciled and applied "in a career offender setting."  (Def.'s Br. at 5, ECF No. 119.)  It appears that as of this writing, no court in this circuit has grappled with this particular

6

question.  Jenkins refers me to <u>United States v. Rivera</u>, 662 F.3d 166, 173-75 (2d Cir. 2011), which invokes the <u>Freeman</u> plurality's definition of "based on" to support a holding that a certain career offender was eligible for a § 3582 reduction.  (<u>See</u> Def.'s Br. at 5, ECF No. 119.)  In <u>Rivera</u>, the Second Circuit explained,

> [T]he starting point for [Rivera's] sentence was a range of 360 months to life (Offense Level 38/CHC VI), but the judge determined that Rivera's mental condition warranted a three-level departure to Level 35.  The judge then imposed a sentence at the bottom of the resulting 292-365 month range.  If Rivera's sentencing range is computed in light of the retroactive amendment, the resulting offense level is 37, not 38.  The same three-level departure from that level (again in CHC VI) produces a sentencing range of 262-327 months.  Thus, there is ample reason to believe that Rivera would have received a sentence as low as 262 months–30 months lower than the sentence imposed–had the offense guideline been amended before he was sentenced.  In short, Rivera seems to have been "disadvantaged by the 100-to-1 sentencing disparity that the crack amendments sought to correct, [<u>United States v. McGee</u>, 553 F.3d 225, 230 (2d Cir. 2009)], in precisely the same way as <u>McGee</u>.
>
> Our approach in <u>McGee</u> and in this case accords precisely with our obligation under § 3582(c)(2) and § 1B1.10 to
>
>> isolate whatever marginal effect the since-rejected Guideline had on the defendant's sentence.  Working backwards from this purpose, § 3582(c)(2) modification proceedings should be available to permit the district court to revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence.
>
> <u>Freeman</u>, 131 S. Ct. at 2692-93 (plurality opinion).  The marginal effect of the rejected 100-to-1 ratio on Rivera's sentence is easily isolated.  It produced a sentencing range with a low end that is 30 months higher than the exact same methodology would produce today.  Accordingly, the district court should be permitted to revisit Rivera's sentence to the extent allowable under § 3582(c)(2) and § 1B1.10.

662 F.3d at 175 (footnote omitted).  This reasoning does not avail Jenkins for three reasons.

First, the <u>McGee</u> rule, which provides the foundation for the court's analysis in <u>Rivera</u>, has been rejected by the Eighth Circuit.  <u>McGee</u> holds "that when the sentencing judge departs from a career offender range to the range established by the offense guideline, a modification under § 3582(c)(2) is available if the latter range has been lowered by the retroactive amendment."  <u>Rivera</u>,

662 F.3d at 172 n.5.[4]  In United States v. Tolliver, 570 F.3d 1062, 1066 (8th Cir. 2009), the Eighth Circuit specifically rejected McGee and held that "any post-departure guideline range that the district court might have relied upon in determining the extent of [the] departure was not the 'applicable guideline range,'" because the application instructions in U.S.S.G. § 1B1.1 "effectively define all departures to be outside the 'applicable guideline range.'"  I am not free to set aside the Eighth Circuit's rule in favor of the Second Circuit's.

In Rivera, the Second Circuit opined that Tolliver "appears to have been abrogated by Freeman" because "the stipulation resolving Tolliver's § 2255 motion appears to have been the functional equivalent of a sentence bargain under Fed. R. Crim. P. 11(c)(1)(C)."  Rivera, 662 F.3d at 178 n.11.  Jenkins, too, argues that Tolliver is no longer good law after Freeman.  (See, e.g., Def.'s Br. at 10, ECF No. 119 ("In summary, Freeman relieves this [c]ourt of any obligation to follow previous Eighth Circuit law and provides a clean slate for the court to determine Jenkins' eligibility for a reduction under § 3582(c)(2).").)  Tolliver does state the following as a secondary rationale in support of its holding:

> In any event, we also conclude that the district court did not err in denying Tolliver's motion for a sentence reduction because Tolliver's sentence was explicitly based on a stipulation between the parties, and not on "a sentencing range that ha[d] subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); cf. United States v. Keith, No. 08-3439, 2009 WL 1783764, at *4 (3d Cir. June 24, 2009) (court was without authority to modify sentence where parties Fed. R. Crim. P. 11(c)(1)(C) plea agreement was only basis for sentence).  We find unavailing Tolliver's assertion, even if true, that during the negotiations to resolve his § 2255 motion by a stipulation agreement, the parties considered the crack cocaine guidelines in determining a 188 month sentence was appropriate.

570 F.3d at 1067.  This portion of Tolliver appears to conflict with the plurality's opinion in Freeman.  Because the Guidelines were merely considered during Tolliver's § 2255 negotiations, however, it is likely that Justice Sotomayor and the four dissenting Freeman Justices would agree that Tolliver's sentence was not "based on" the Guidelines.  See Freeman, 131 S. Ct. at 2697

---

[4] Rivera extends the McGee rule to a situation where "the sentencing judge did not depart to the range supplied by the offense guideline," but instead "departed three offense levels from the career offender range based on U.S.S.G. § 5H1.3 because of Rivera's mental condition."  662 F.3d at 173.

(Sotomayor, J., concurring) ("[T]he mere fact that the parties to a (C) agreement may have considered the Guidelines in the course of their negotiations does not empower the court under § 3582(c)(2) to reduce the term of imprisonment ultimately agreed upon . . . ."). In short, Freeman does not "abrogate" the portion of Tolliver quoted above; moreover, Freeman simply does not speak to the Eighth Circuit's primary rationale for affirming the denial of Tolliver's § 3582(c)(2) motion (i.e., that Tolliver's "applicable guideline range" is the career offender range–excluding any departures–and Tolliver is ineligible for § 3582(c)(2) relief because the career offender range was not lowered by the amendments to the crack Guidelines).

In any case, Rivera is not helpful to Jenkins for a second reason: Even if I were to reject Tolliver and apply the Second Circuit's rule in Jenkins' case, Jenkins' applicable guideline range would not be lowered. As noted above, Rivera's base offense level was higher (38) under the pre-amendment version of section 2D1.1 than it was under the career offender guideline (37); therefore, when Rivera's sentencing range was calculated in light of the retroactive amendment (which reduced the section 2D1.1 offense level from 38 to 36), his base offense level became 37 under the career offender guideline. Factoring in the three-level departure lowered the offense level to 34 (it was 35 at his original sentencing), which produced a sentencing range of 262-327 months (down from 292-365 months at his original sentencing). Thus, in Rivera's case, the pre-amendment Guidelines "produced a sentencing range with a low end that is 30 months higher than the exact same methodology would produce" under the amended Guidelines. 662 F.3d at 175.

In Jenkins' case, however, Amendment 750 does not produce a lower sentencing range. As I explained above, if Amendment 750 had been in effect at the time of Jenkins' original sentencing, his section 2D1.1 offense level would have been 26 rather than 30. Under section 4B1.1, however, his offense level still would have been 37 and his criminal history category still would have been VI. In other words, unlike Rivera, Jenkins sees no benefit when the amended guideline is substituted for the original guideline. The three-level reduction for acceptance of responsibility would have reduced Jenkins offense level to 34, just as it was originally. And the same additional 3-level reduction that I applied during the sentencing hearing would have placed Jenkins in precisely the same spot that

9

he was in prior to the adoption of Amendment 750.  Thus, the <u>Rivera</u> rule would not reduce Jenkins' sentence.[5]

Put another way, the guideline that was lowered in Rivera's case "was a relevant part of the analytic framework" for determining his sentence, <u>Freeman</u>, 131 S. Ct. at 2693 (plurality opinion), and it was "the basis or foundation" for his original sentence, <u>id.</u> at 2695 (Sotomayor, J., concurring), because his pre-departure offense level was based on that guideline even though he qualified as a career offender.  Similarly, the relevant guideline in <u>Freeman</u> "was a relevant part of the analytic framework" and was "the basis or foundation" for Freeman's sentence because it was used to determine the recommended sentence that appeared in the Rule 11(c)(1)(C) agreement.  In Jenkins' case, however, section 2D1.1 was neither "a relevant part of the analytic framework" nor "the basis or foundation" for Jenkins' sentence because Jenkins' offense level flowed directly from the career offender guideline.  The sentence that was ultimately imposed had absolutely nothing to do with the guideline that was affected by Amendment 750.

Third, and perhaps most significantly, the court acknowledged in <u>Rivera</u> that a then-proposed amendment to U.S.S.G. § 1B1.10[6] would "preclude sentence modifications in situations like the one in <u>McGee</u>." <u>Rivera</u>, 662 F.3d at 183.  The court added, "Indeed, because the amendment will prescribe the precise construction of 'applicable guideline range' that we refuse to give the existing guideline, <u>i.e.</u>, it is the pre-departure range from the initial sentencing, the proposed amendment would render Rivera himself ineligible for a sentence reduction if it were applied to his case." <u>Id.</u> The court found, however, that because the amendment is "substantive," it "cannot fairly be applied retroactively to Rivera's § 3582(c)(2) proceeding on remand." <u>Id.</u> at 183-84.  In short, it seems that

---

[5] I note in passing that in <u>McGee</u>, the district court departed "from the career offender guideline to a sentence based explicitly on the drug offense guideline," and the Second Circuit held that under these circumstances, the defendant was eligible for a § 3582(c)(2) reduction based on an amendment to the drug offense guideline. <u>See Rivera</u>, 662 F.3d at 172 (citing <u>McGee</u>, 553 F.3d at 226, 228, 230).  In Jenkins' case, however, I did not depart from the career offender guideline in order to base his sentence on the range provided under section 2D1.1.  (<u>See generally</u> Sentencing Tr., ECF No. 116.)  Thus, the <u>McGee</u> rule would not avail Jenkins.

[6] This amendment went into effect on November 1, 2011.  <u>See</u> U.S. Sentencing Guidelines Manual app. C (Vol. III), Amendment 759, p. 416 (2011).

Rivera is no longer good authority, and I am not persuaded that its interpretation of Freeman ought to be applied in Jenkins' case.

Jenkins also refers me to United States v. Ware, No. 08-625-01, 2012 WL 38937 (E.D. Pa. Jan. 9, 2012).  (See Def.'s Br. at 8, ECF No. 119.)  In the words of the court, Ware "present[ed] a single, narrow issue: is a defendant eligible for a sentence reduction under the retroactive crack cocaine amendments when the [c]ourt originally imposed a non-guideline sentence but explicitly stated that the sentence was double the period of incarceration to which defendant would have been subject under the sentencing guidelines if he had not qualified as a Career Offender[?]" 2012 WL 38937, at *5.  By answering this question in the affirmative, Ware, like Rivera, runs afoul of the current commentary to U.S.S.G. § 1B1.10.  Nevertheless, the court found that "18 U.S.C. § 3582(c)(2), as interpreted by the Supreme Court in Freeman, authorizes the [c]ourt to reduce defendant's sentence even though the Application Note Commentary to USSG § 1B1.10 (2011 ed.) would bar relief." Ware, 2012 WL 38937, at *6.  More specifically, the court found that Justice Sotomayor's opinion in Freeman was controlling, and that pursuant to her definition of the statutory term "based on," section 1B1.10 and its commentary must "permit the [c]ourt to reduce a defendant's sentence when the guidelines range that was the basis for the sentence the [c]ourt actually imposed has been amended." Ware, 2012 WL 38937, at *8.  The court added, "To the extent that USSG § 1B1.10's Application Notes Commentary prohibits this [c]ourt from reducing defendant's sentence, it is incompatible with 18 U.S.C. § 3582(c)(2) as interpreted by the Supreme Court and is invalid, at least in the situation where the [c]ourt imposes a non-guidelines sentence and explicitly bases that sentence on a guidelines range that is subsequently amended."  Id.

Ware is not universally accepted in its home district, see United States v. Flemming, Crim. No. 03-148-01, 2012 WL 33019 (E.D. Pa. Jan. 5, 2012), and it seems to me that its analysis is flawed. Section 3582(c)(2) contains two elements: a sentence may be reduced 1) if it was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," and 2) if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." As noted previously, the "applicable policy statement" now includes an application note that is squarely in conflict with Ware's holding.  See U.S.S.G. § 1B1.10, cmt. n.1(A) ("Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in subsection

11

(c) that lowers the applicable guideline range (i.e., the guideline range that corresponds to the offense level and criminal history category determined pursuant to § 1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance).").  To avoid this conflict, Ware "ignores the second requirement under § 3582(c)(2)" while invoking Freeman as a justification for doing so.  United States v. Carrigan, No. 3:04cr250, 2012 WL 716159, at *8 n.7 (M.D. Pa. March 5, 2012).  Freeman, however, focuses on the first element of § 3582(c)(2) (i.e., the meaning of the term "based on"), and simply does not speak to the question of whether the "applicable guideline range" is the pre- or post-departure range.  Moreover,

> As Justice Sotomayor stated in Freeman, sentence modification is a creature of statute, not judicial construction.  As a result, courts may reduce a term of imprisonment only as authorized by § 3582(c)(2).  And § 3582(c)(2) permits modification only when "a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  There is thus no escaping § 1B1.10.

United States v. Vinnie, No. CR04-326RSL, 2012 WL 992113, at *3 (W.D. Wash. March 22, 2012) (citations omitted).

Furthermore, even if I were to apply Ware's analysis in this case, it would not lead to a sentence reduction for Jenkins.  Although I did "impose[] a non-guidelines sentence" upon Jenkins, I did not base that sentence on the guidelines range that was altered by Amendment 750.  Rather, I reduced the offense level that was calculated pursuant to the career offender guideline by three additional levels because a traumatic childhood event had a significant impact upon Jenkins and because Jenkins provided substantial assistance to the government.  (See Statement of Reasons at 3, ECF No. 88; see generally Sentencing Tr., ECF No. 116.)  Thus, Jenkins would not be eligible for a sentence reduction under Ware.

In summary, Jenkins asks that I "invalidate" the commentary to U.S.S.G. § 1B1.10 and "revisit [his] sentence to the extent that the crack cocaine guidelines were a relevant part of the analytic framework [I] used to determine his sentence."  (Def.'s Br. at 10, ECF No. 119 (quoting Freeman, 131 S. Ct. at 2693 (plurality opinion).)  I am not persuaded that the commentary to section 1B1.10 conflicts with § 3582(c)(2) or Freeman, or otherwise ought to be invalidated.  Furthermore, the newly-amended guideline was not "a relevant part of the analytic framework" that I used to determine Jenkins's sentence.  I do not say that it was no part of the framework, but it had no bearing

12

upon the sentence that I imposed, and it clearly did not "serve[] as the basis or foundation for the term of imprisonment."  <u>Freeman</u>, 131 S. Ct. at 2695 (Sotomayor, J., concurring).  Therefore, Jenkins is not eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2).

**IT IS ORDERED** that the defendant's motion for sentence reduction, ECF No. 106, is denied.

Dated April 4, 2012.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge